Per Curiam.

Plaintiff’s son opened an account with defendant on her behalf and directed a sale of certain shares of stock, representing that she owned such stock and that he would obtain the certificates from her in Florida and would deliver them to defendant by settlement date. In fact, plaintiff did not own such stock and the certificates were never delivered to defendant. Defendant executed the sale order and its bookkeeping records credited plaintiff with the proceeds of the sale. The market price of that stock thereafter dropped. More than two months later defendant sent a telegram to plaintiff that it would “ buy you in” unless the certificates were delivered the next morning. The stock was then purchased by defendant, resulting in a profit of $3,434 on the transaction, which plaintiff seeks to recover in this action.
The theory of plaintiff’s cause of action is breach of an alleged contract of agency. The defendant’s breach can only be its failure to carry out its implied promise to pay to plaintiff the proceeds, less commissions, of the sale of the shares of stock purportedly owned by plaintiff which defendant was engaged as agent to sell. Defendant’s implied promise, however, was in exchange for plaintiff’s express promise to put into defendant’s hands, at the required time, the shares of stock falsely represented by her son as owned by her. Defendant’s promise was induced by plaintiff’s conceded fraud. Plaintiff’s *1056 fraud renders the contract of agency nudum pactum for want or failure of consideration. There is no more consistently observed principle of law and equity than that preserved in the ancient maxim of the civil law that from a morally debased cause no right of action arises.
It is urged that defendant did not terminate the contract of agency on proper and timely notice and that its acts manifest an affirmance, rather than a rescission, of the contract. The fact that defendant’s records were maintained on the usual assumption that plaintiff would perform as represented and that defendant did not formally renounce the agency and cancel the transaction is not significant. The “buy in” telegram constituted, in effect, notice of cancellation. Thus, defendant did rescind the contract. Certainly, plaintiff suffered no prejudice because defendant rescinded the contract at that time rather than on settlement date.
Plaintiff’s fraudulent representation enabled her to make a short sale without the required deposit of margin. Had the price of the stock gone up, defendant would have had a loss on .its hands and would have had to look for plaintiff to try to collect it. Defendant was undoubtedly imprudent in accepting the representation of the son but not guilty of any wrongdoing. As between plaintiff and the defendant, the profit here made should remain with defendant, since it evolved through plaintiff’s fraud in a transaction with potentiality for loss hut which, fortunately, turned out to he profitable. Certainly, the courts should not lend their assistance to aid a fraudulent person to collect the fruits of his fraud.
This case is clearly distinguishable from Myer v. Shields & Co. (25 A D 2d 126). There defendant stockbroker agreed to accept payment in installments from the customer, constituting an unlawful extension of credit by defendant in violation of the law and the applicable regulation. It was held that the customer was entitled to his stock after he had paid for it in full, .since he had not acted in violation of the act or any rule or regulation thereunder. Here the customer has acted in violation of the law and regulations, the stockbroker being induced to act in the transaction through the customer’s frauds ulent representation.
The judgment should be affirmed, with $25 costs; the appeal from the decision should be dismissed, without costs.